IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DUSTIN J. JOHNSON,

                Petitioner,                OPINION AND ORDER

    v.                                      07-cv-674-bbc

PETER HUIBREGTSE, Warden,
Wisconsin Secure Program Facility,

                Respondent.

---

      This is a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. Before the court is the motion of petitioner Dustin Johnson for an order staying his case and placing it in abeyance so that he may return to state court and exhaust new claims, most of which consist of claims of ineffective assistance of trial and postconviction counsel. Respondent opposes the motion, contending that because petitioner has not shown either that he has good cause for his failure to exhaust his claims in state court or that the unexhausted claims have any merit, the issuance of a stay is prohibited by Rhines v. Weber, 544 U.S. 269, 275 (2005). Because I agree that petitioner does not meet the criteria under Rhines for the issuance of a stay, his motion will be denied.

      From the petition and its attachments and petitioner's memorandum in support of his motion to stay, I find the following facts for the purposes of deciding this motion.

FACTS

A. State Court Proceedings

Petitioner challenges his convictions arising from two separate Eau Claire County cases, No. 2002 CF 256 and No. 2002 CF 554.  The facts leading up to petitioner's conviction and resulting sentence were summarized as follows by the Wisconsin Court of Appeals:

> In Eau Claire County case No. 2002CF256, the State charged Johnson with aggravated battery as party to a crime and three counts of obstructing an officer, alleging that Johnson and his co-defendants had assaulted Scott Garnett.  In Eau Claire County case No. 2002CF554, the State charged Johnson with attempted first-degree homicide as party to a crime, aggravated burglary as party to a crime, felony bail jumping, and theft as party to a crime, alleging Johnson and a co-defendant had attacked Ken Lesperance and stabbed him multiple times.
>
> Johnson and the State reached a plea agreement encompassing both cases.  Johnson pled guilty to substantial battery as party to a crime, a lower class of felony, in case No. 2002CF256.  In case No. 2002CF554, Johnson entered no contest pleas to burglary, felony bail jumping, and aggravated battery as party to a crime and with a weapons enhancer.
>
> . . . Johnson purportedly wanted to enter an *Alford* plea [to the aggravated battery charge] because he insisted he had not stabbed Lesperance.  The State, however, had said an *Alford* plea would negate the entire agreement.  At the plea hearing, Johnson's attorney, Michael Cohen, told the court:
>
>> [Johnson] does not admit that he engaged in that conduct, but he understands that under a no-contest plea what he's telling the Court is that there is sufficient information in the case which he has reviewed which he understands that if the case went to trial and a jury believed the State's version of the events and not his, that there is sufficient information to convict him, so that is

2

>> the charge to which we're entering pleas of no contest.
>
> When the court addressed Johnson and asked for his plea to the aggravated battery charge, he answered, "no contest."
>
> Sentencing was three months after the plea hearing. As Cohen made his sentencing argument, he stated "if the court may recall, at the time of the entry of the plea, he pled *Alford* to the [aggravated battery]." The State protested, telling the court Johnson had not entered an *Alford* plea but that if he were so insisting, the court should allow his plea withdrawal and the State would take the case to trial.
>
> Ultimately, the court rejected Cohen's assertion, observing that the minutes reflected a no contest plea to the aggravated battery charge. The court refused to conclude Johnson had entered an *Alford* plea and advised that it would either proceed to sentence Johnson on the no contest pleas, or he could move to open the judgment or withdraw the plea. Cohen stated he would not delay the proceedings and the court ultimately sentenced Johnson to a total of twenty years' initial confinement and ten years' extended supervision.

State v. Johnson, App. Nos. 2005AP 2215-CR and 2008AP2216-CR (Ct. App. Mar. 28, 2006) at ¶¶2-6 (footnotes omitted), attached to Pet., dkt. #1, exh. 3.

The state public defender's office appointed a new lawyer to represent petitioner on appeal. The lawyer filed a no merit report, to which petitioner filed a response. The Wisconsin Court of Appeals rejected the no merit report, finding arguable merit to petitioner's claim that when he entered a plea of "no contest" to the aggravated battery charge, he intended to enter a plea pursuant to North Carolina v. Alford, 400 U.S. 25 (1970). The court directed counsel to "either file a supplemental no-merit report or a

3

postconviction motion to withdraw the plea or for resentencing based on the misunderstanding of the nature of Johnson's plea." Pet., dkt. #1, exh. 1, at 2.

Counsel filed a motion to withdraw the plea on petitioner's behalf. Petitioner argued that he intended to enter an <u>Alford</u> plea to the aggravated battery charge and that Cohen had been ineffective for failing to ensure that petitioner entered the correct plea. Petitioner alleged that he would not have entered a no contest plea and that, when the dispute over which type of plea he had entered arose at sentencing, Cohen should have conferred with him before "renegotiating" his plea and conceding that it was a no contest plea. Petitioner further alleged that his plea had not been made knowingly or voluntarily. <u>Johnson</u>, at ¶7.

The trial court held an evidentiary hearing, after which it denied petitioner's motion. The court found that by invoking the term "Alford" at the sentencing hearing, Cohen had been attempting to circumvent the plea agreement and that petitioner was fully aware of this strategy. "The court observed that Johnson specifically stated 'no contest' when asked for his plea and found that he purposefully avoided stating he was entering an *Alford* plea because Cohen had warned him the State would not accept that plea." <u>Id.</u>, at ¶11.

The court of appeals affirmed the trial court. It found that the trial court had not clearly erred when it found that petitioner had been aware of Cohen's hybrid plea strategy and that he had approved of it. The court explained:

> Because Johnson was complicit in Cohen's plan, his plea was necessarily informed; simply put, he knew what was going on. The plan simply failed. Johnson cannot now, in hindsight, disavow the strategy he accepted. There is no basis for Johnson to withdraw his plea as unknowing or involuntary.

4

Id. at ¶15.

The court also rejected petitioner's claim that Cohen had been ineffective for attempting to circumvent the plea agreement. Applying the two-part test outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984), the court found that even if Cohen had performed deficiently, petitioner's claim failed because he could not show how he was prejudiced by Cohen's actions:

> Nothing suggests Johnson would have been able to enter an *Alford* plea--the State was unwilling to accept one. Thus, he would either have had to accept the no contest plea or face trial on attempted homicide charges. Because Johnson was equally adamant about not going to trial on the attempted homicide charge, no different outcome could have resulted. There is no reason to believe Johnson would have agreed to proceed to a trial.

Id. at ¶17. The court continued:

> The primary reason Johnson wanted to enter an *Alford* plea was to maintain that he had not actually stabbed Lesperance. The trial court, however, acknowledged Johnson's position in that regard at sentencing. Moreover, Johnson was charged as a party to the crime for the attack on Lesperance. Under Wis. Stat. § 939.05(1), "[w]hoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although the person did not directly commit it." Because Johnson at least acknowledged choking Lesperance, the underlying facts support the aggravated battery conviction regardless whether Johnson did the actual stabbing. Thus, his protestations of innocence do not suggest a reasonable probability of a different outcome. Confidence in the result is not undermined.

Id. at ¶18.

Finally, the court rejected petitioner's claim that Cohen was ineffective for failing to consult him about the plea "renegotiation" that occurred at the sentencing hearing when the

5

state corrected Cohen's statements about Johnson's plea and Cohen declined to delay the proceedings. The court found that Johnson's argument was premised on the idea that he had entered an *Alford* plea, which he had not. Id. at ¶19.

The Wisconsin Supreme Court denied petitioner's petition for review on August 30, 2006. Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court, meaning that his conviction became final on November 30, 2006. Anderson v. Litscher, 281 F.3d 672, 675 (7th Cir. 2002). Petitioner filed his petition for a federal writ of habeas corpus on November 26, 2007. He raised the following claims:

> 1) petitioner's plea of no contest to aggravated battery in case No. 2002 CF 554 was neither knowing nor voluntary because he intended to enter an *Alford* plea;
>
> 2) his trial counsel was ineffective in that case for failing to ensure that he entered the correct plea; and
>
> 3) the entry of a no contest plea violated petitioner's Fifth Amendment right against self incrimination.

On December 20, 2007, this court ordered respondent to respond to the petition. Before respondent filed any response, petitioner filed the instant motion to stay proceedings.

## B. Petitioner's Unexhausted Claims

Petitioner asks the court to stay proceedings on his petition and place his case in abeyance so that he can pursue his state court remedies on several additional claims of ineffective assistance of trial counsel, defects in the plea proceedings and the alleged failure

6

of the state to disclose exculpatory evidence. (I infer that, as in his state court appeal, petitioner's claims relate only to his no contest plea in case No. 2002CF554.) In addition, petitioner raises a "gateway" claim of ineffective assistance of postconviction counsel based on counsel's failure to raise these claims in the state court postconviction motion. (Although petitioner alleges in his memorandum that postconviction counsel was ineffective only for failing to raise a claim of ineffective assistance of trial counsel on the basis of trial counsel's alleged failure to review discovery materials in the state's possession, I will give him the benefit of the doubt and assume that he is contending that his failure to exhaust *all* of his various postconviction issues was the fault of his postconviction lawyer. See Wis. Stat. § 974.06 (defendant may not seek collateral relief on ground not raised on direct appeal absent "sufficient reason" for failing to raise claim on appeal).)

The unexhausted claims that petitioner contends his lawyer should have pursued in a post-conviction motion in the trial court are as follows:

1) Trial counsel was ineffective for:

    a) failing to obtain, review and investigate discovery materials he knew to be in the state's possession before advising petitioner to enter a plea;

    b) failing to challenge inaccurate information contained in the presentence report relied on by the circuit court at sentencing; and

    c) failing to investigate petitioner's psychological profile in order to refute a state psychologist's conclusion that petitioner was a psychopath and sociopath;

2) The state violated petitioner's rights to due process when it failed to turn over exculpatory evidence and "other evidentiary materials" that could have been favorable to the defense;

3) The circuit court abused its discretion when it accepted Johnson's plea without adequately inquiring into Johnson's knowledge of the nature of the crime charged and without finding that a sufficient factual basis existed to support the plea; and

4) Newly discovered evidence exists that undermines the validity of petitioner's plea.

Petitioner also alleges that postconviction counsel was ineffective for "failing to raise and argue all issues the Court of Appeals ordered her to address."

Petitioner raises additional claims of ineffective assistance of appellate counsel based on his lawyer's failure to take certain actions at the appellate stage that did not require the filing of a postconviction motion. State ex rel. Rothering v. McCaughtry, 205 Wis. 2d 675, 683-84, 556 N.W. 2d 136, 140 (Ct. App. 1996) (explaining differences between functions of postconviction lawyer and appellate lawyer). He contends that his appellate lawyer provided ineffective assistance by:

1) failing to obtain, review and investigate the discovery materials in the state's possession;

2) failing to explain to petitioner that he was obligated to raise any issues he wanted to preserve for appeal in his response to the no-merit report;

3) failing to investigate petitioner's psychological profile;

4) erroneously advising petitioner to waive his claim based upon exculpatory evidence; and

5) abandoning stronger issues in favor of weaker ones on appeal and failing to properly challenge the circuit court's findings on appeal.

In his list of unexhausted claims, petitioner also contends that his trial lawyer was ineffective for advising petitioner to pursue the "hybrid" plea strategy and then, later, when the court rejected counsel's suggestion that petitioner had entered an *Alford* plea, failing to allow petitioner to choose whether he wanted to withdraw his plea or proceed with sentencing. However, petitioner raised both of these arguments on appeal. I consider these claims to be exhausted and encompassed within the claims to which respondent was ordered to respond.

## OPINION

In Rhines, 544 U.S. 269, the Supreme Court considered whether a federal district court has discretion to stay a mixed federal habeas petition, that is, a petition containing both exhausted and unexhausted claims, to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then return to federal court for review of his perfected petition. Taking into account the interplay between the one-year statute of limitations imposed by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2244(d), and the total exhaustion requirement of Rose v. Lundy, 455 U.S. 509 (1982), the Court ruled that a district court has such discretion in situations in which outright dismissal of a mixed petition could jeopardize the opportunity for any federal review of the unexhausted claims. Id. at 275. The Court cautioned, however, that use of the stay-and-

abeyance procedure was a proper exercise of discretion only if it was compatible with the Antiterrorism and Effective Death Penalty Act's objectives of encouraging finality of state court judgments and streamlining federal habeas proceedings by requiring petitioners to first exhaust their claims in state courts. Id. at 277. Stay and abeyance is available only if there was good cause for petitioner's failure to exhaust his claims in state court first and the unexhausted claims are not plainly meritless. Id.

Before applying these criteria to petitioner's motion, a few preliminary observations are warranted. First, the necessity of a stay is implicated because petitioner no longer has any time remaining in his one-year limitations period. Petitioner filed his petition for a federal writ of habeas corpus on November 26, 2007, just four days before his limitations period expired. 28 U.S.C. § 2244(d)(1)(A). Because the filing of the petition did not toll petitioner's deadline, Duncan v. Walker, 533 U.S. 167, 180 (2001), petitioner's limitations period expired four days later, on November 30, 2007. This means that any postconviction motion that petitioner might file in state court would have no tolling effect. Dolis v. Chambers, 454 F.3d 721, 723 (7th Cir. 2006). Thus, if the instant petition is dismissed outright rather than placed in abeyance while petitioner exhausts his state court remedies, he will have lost his opportunity for federal review of *all* of his claims, including the claims he has already exhausted.

Second, petitioner's pending habeas petition is technically not a mixed petition because it consists solely of claims that have been exhausted in state court. However, I see

no reason why Rhines would not apply simply because the claims that petitioner wants to exhaust are not yet part of the petition. It would make little sense to allow petitioner to amend his petition to add unexhausted claims, only to dismiss them in the event a stay is not granted. Accordingly, I will apply the Rhines criteria to determine whether a stay is warranted to allow petitioner to pursue his unexhausted claims. Accord Dolis, 454 F.3d at 724-25 (affirming remand to district court to decide whether stay warranted where petitioner had not exhausted any of his claims).

A.  Good Cause

As good cause for his failure to exhaust his state court remedies, petitioner cites his *pro se* status and lack of legal training, asserting that he has had to rely on other prisoners for help with legal research and drafting. Apart from the Supreme Court's suggestion that "a petitioner's reasonable confusion about whether a state filing would be timely" would constitute good cause for him to file in federal court before exhausting his state court remedies, Pace v. DiGuglielmo, 544 U.S. 408, 416 (2005), the Court has not offered any examples of the circumstances that would constitute "good cause" for a petitioner's failure to exhaust all of his federal claims in state court. (In Rhines, the Court was silent on the question.) Lacking any clear definition from the Supreme Court, the lower courts have diverged on the meaning of "good cause," with some courts equating it to the external circumstances that must exist in order for a petitioner to show cause to overcome a

procedural bar, e.g., Hernandez v. Sullivan, 397 F. Supp. 2d 1205, 1206-07 (C.D. Cal. 2005); Johnson v. Sullivan, 2006 WL 37037, *3 (C.D. Cal. Jan. 4, 2006); Pierce v. Hurley, 2006 WL 143717, *8 (S.D. Ohio Jan. 18, 2006); Carter v. Friel, 2006 WL 208872, *3 (D. Utah Jan. 26, 2006), and others finding that "good cause" requires a lesser showing. Bryant v. Greiner, 2006 WL 1675938, *5 (S.D.N.Y. June 15, 2006); Fernandez v. Artuz, 2006 WL 121943, at *6-7 (S.D.N.Y. Jan. 18, 2006); Rhines v. Weber, 408 F. Supp. 2d 844, 849 (D.S.D. 2005) (on remand).

Even among courts applying this more lenient standard, however, I have found only one case holding that a prisoner's lack of legal knowledge alone is a circumstance amounting to good cause. Riner v. Crawford, 415 F. Supp. 2d 1207, 1210-11 (D. Nev. 2006) (including petitioner's "own ignorance or confusion about the law" in definition of good cause). Most courts that have considered this question agree that the mere fact that a petitioner is acting *pro se* or lacks knowledge of the law does not establish "good cause," for the reason that virtually any prisoner could make this showing. Smith v. Giurbino, 2008 WL 80983, *5 (S.D. Cal. Jan. 7, 2008) (report and recommendation) (granting stay on basis of prisoner's lack of legal expertise would be contrary to Rhines's admonition that stay and abeyance be available only in "limited circumstances") (adopted by district court); Brummett v. Clark, 2007 WL 1302503, *1 (E.D. Cal. May 1, 2007) (lack of knowledge of particular rule or law rarely, if ever, provides justification for failure to comply with that rule or law); Johnson v. Sullivan, 2006 WL 37037, *3 (C.D. Cal. Jan. 4, 2006) ("a finding that a lack of

legal knowledge establishes cause for a failure to exhaust would defeat the purpose of exhaustion as any petitioner could claim lack of knowledge to continually amend their Petition"). Accord Calvert v. Daniels, 2006 WL 2527639, *2 (E.D.Wash. Aug. 28, 2006); Riseley v. Warden, Pleasant Valley State Prison, 2006 WL 1652657, at *2 n. 3 (E.D. Cal. June 14, 2006). I agree with these courts and find that petitioner's *pro se* status is an insufficient basis on which to find good cause for his failure to exhaust his state court remedies.

Petitioner's motion raises another potential ground for a finding of good cause, however. He contends that his failure to exhaust his claims was the fault of his postconviction/appellate lawyer, who failed to pursue the claims on direct appeal. Without much discussion of the matter, several district courts have found that alleged ineffective assistance of counsel during postconviction or appellate proceedings did constitute good cause for failure to exhaust claims in state proceedings. E.g., Iscaro v. Trombley, 2006 WL 1064218, *3 (E.D. Mich. Apr. 21, 2006); Rhines, 408 F. Supp. at 849 (finding ineffective assistance of counsel analogous to "reasonable confusion about whether a state filing would be timely"); Ramchair v. Conway, 2005 WL 2786975, *16 (E.D.N.Y., Oct. 26, 2005); Boyd v. Jones, 2005 WL 2656639, *4 (E.D. Mich. Oct. 14, 2005); Fradiue v. Pliler, 2005 WL 2204862, *2 (E.D. Cal. Sept. 8, 2005); Martin v. Warren, 2005 WL 2173365, *2 (E.D. Mich., Sept. 2, 2005). At least three district courts have found that alleged ineffective assistance of counsel during postconviction proceedings does not constitute good cause. E.g.,

13

Carter v. Friel, 2006 WL 208872, *3 (D. Utah, Jan. 6, 2006); Vasquez v. Parrott, 397 F. Supp. 2d 452, 464 (S.D.N.Y., 2005); Hubbert v. Renico, 2005 WL 2173612, *3 (E.D. Mich., Sept. 7, 2005).

Assuming without deciding that ineffective assistance of counsel could support a finding of good cause in some instances, I cannot conclude that it supports such a finding in this case. Even before he filed his direct appeal, petitioner knew of the various claims that he says his postconviction/appellate lawyer should have raised. Indeed, it appears that he may have raised some of these claims in his response to appellate counsel's no-merit report. As of this date, however, petitioner has not attempted to file a petition for a writ of habeas corpus or a postconviction motion in the Wisconsin courts raising his claims of ineffective assistance of counsel. Rothering, 205 Wis. 2d at 683-84 (petition for writ of habeas corpus to court of appeals is vehicle for presenting claims of ineffective assistance of appellate counsel, while postconviction motion in trial court under Wis. Stat. § 974.06 is vehicle for presenting claim that lawyer erred by failing to preserve issues for appeal that required filing of postconviction motion). Appellate counsel cannot be blamed for petitioner's failure to pursue his state court remedies for more than one year.

B. Potential Merit of Claims

Even if petitioner could show good cause for his failure to exhaust his state court remedies, I would deny his motion for a stay because his unexhausted claims have no

potential merit. Rhines, 544 U.S. at 278. The most significant of petitioner's claims is his claim that the state failed to disclose (and his lawyers failed to obtain) exculpatory evidence. This evidence consists of police reports, photographs, videotapes, laboratory reports and witness statements that petitioner says support his assertion that he did not stab Lesperance. (Although he labels this evidence as "newly discovered," he admits that he discovered it after sentencing.) Petitioner suggests (but has not sworn) that he would have gone to trial on the attempted homicide charge had he been aware of this evidence.

Petitioner's claim that he should be allowed to withdraw his plea on the basis of this evidence is defeated by certain findings made by the state court of appeals in the course of rejecting petitioner's claim that he would have gone to trial had he known that he would not be allowed to maintain his innocence by way of an Alford plea. As detailed above, the Wisconsin Court of Appeals found that petitioner was "adamant" that he did not want to go to trial on a charge of attempted homicide. It also found that the trial court had considered at sentencing petitioner's position that he had not actually stabbed Lesperance and that whether or not petitioner actually did the stabbing, petitioner's admission that he had choked Lesperance supported petitioner's conviction for aggravated battery as party to a crime. Overall, found the court, petitioner's "protestations of innocence [about the stabbing] do not suggest a reasonable probability of a different outcome." Johnson, at ¶18.

These facts, which are presumed to be correct under 28 U.S.C. § 2254(e)(1), defeat petitioner's claim that he would have forgone the benefits of the plea agreement and risked

15

a trial on the charge of attempted homicide if his lawyer had discovered, and in turn disclosed to petitioner, evidence in the state's possession that tended to show that petitioner did not wield the knife. Although made in the context of a different claim, the appellate court's findings show that there is no potential merit to petitioner's claims based on the so-called "exculpatory" evidence. The court found that petitioner did *not* want to go to trial and that his denial of having stabbed Lesperance was largely irrelevant to the outcome.

The same goes for petitioner's objections to the adequacy of the trial court's plea colloquy. At most, petitioner has established that the trial court did not conduct the plea colloquy in accordance with Wis. Stat. § 971.08. That statute instructs trial courts that, before accepting a guilty or no contest plea, the court must be satisfied that a factual basis exists to support the conviction and that the defendant understands the nature of the charge and the potential punishment if convicted. However, Wis. Stat. § 971.08 "is not a constitutional imperative;" rather, it is a procedural rule designed to help the trial court make the required determination that the defendant's plea is voluntary. State v. Bangert, 131 Wis. 2d 246, 261, 389 N.W. 2d 12 (1986). Therefore, a guilty plea taken in violation of the statutory requirements still would be *constitutionally* sound if the plea was knowing, intelligent and voluntary. Haase v. United States, 800 F.2d 123, 127 (7th Cir. 1986).

Apart from the failure of the trial court to adhere to the requirements of Wis. Stat. § 971.08, petitioner has not alleged any facts to suggest that he did not actually understand the elements of the crimes charged or the consequences of his plea, much less that he would

not have entered a plea had he been properly informed. As for his claim that no factual basis existed for the plea, that claim is defeated by the state court of appeals' finding that "[b]ecause [petitioner] acknowledged choking Lesperance, the underlying facts support the aggravated battery conviction regardless whether Johnson did the actual stabbing." Johnson, at ¶18. (Although petitioner now denies that he admitted choking the victim, he has not supported his denial with any persuasive evidence.)

Because petitioner's underlying claims have no merit, he cannot succeed on his claim that his postconviction/appellate lawyer was ineffective for failing to raise those claims or for not advising petitioner that he should raise the claims in his response to the no merit report. This leaves only petitioner's claim that appellate counsel was ineffective for failing to argue that the presentence investigation report contained inaccurate information, namely, information from a psychological report indicating that petitioner was a sociopath and psychopath. However, petitioner admits that he presented this claim to the court of appeals in his response to his lawyer's no merit report. Mem. in Support of Mot. to Stay, dkt. #6, at 7. In the appellate court's ruling on the no merit report, the only meritorious issues it identified were those relating to petitioner's alleged misunderstanding about the nature of the plea, and it was only those issues that it ordered counsel to pursue. Accordingly, because the court of appeals had implicitly found no merit to petitioner's claim that the presentence report contained inaccurate information, appellate counsel was not ineffective for failing to raise it.

In summary, petitioner has failed to show either that good cause exists for his failure to exhaust his claims in state court or that the claims have any potential merit.

ORDER

IT IS ORDERED that the motion of petitioner Dustin Johnson for a stay of proceedings is DENIED.

Respondent must file an answer to the petition no later than April 1, 2008. Petitioner has until April 15, 2008 in which to file a reply.

Entered this 14th day of March, 2008.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge